23-5273 Matthew J. Hight v. United States Department of Homeland Security et al. Mr. Redfern for the appellate, Mr. Lozando for the appellees, and Mr. Longstress for the intervener. Good morning, Your Honor. May it please the Court. I'm Jeffrey Redfern, here on behalf of the appellant, Captain Matthew Hight. Under this Court's APA precedence, the Coast Guard is required to explain the inconsistent treatment of regulated parties. It's required to rationally respond to parties' arguments, and it cannot simply rubber stamp the assertions of third parties. The decision in this case falls well short of those standards. It's not a particularly close call. And I'd like to start by addressing the training. Captain Hight has maintained, from 2018 until the present, that he did all of the training that he was asked to do, and it's the same training that all of his contemporaries did. They all got their registrations, yet he didn't. And now he's being subjected to a new, unwritten requirement that was invented out of thin air for the specific purpose of denying him his registration. Under this Court's decision in Baltimore Gas, once a party raises credible allegations of inconsistent treatment, the burden is on the agency to explain that treatment. The Coast Guard didn't do that. It said, I'm not going to discuss the status of another mariner. And even the final decision in this case doesn't even acknowledge these allegations. It just said, you haven't completed your training because the association says so. No, it doesn't say that, sir. You look at JA-271, the decision on appeal. The director said, while Captain Hight has adequate lake experience, he has comparatively little river experience and has never solo navigated a vessel between Snell Lock to the east and Cape Vincent, where D1's waters become undesignated. Right? That's correct, but that is simply repeating what the association has told the Coast Guard. Our question is whether there's substantial evidence to support that finding. Right? Isn't that our standard of review? Respectfully, no, Your Honor. That's a secondary question. The first question is whether the decision here has adequately explained inconsistent treatment. Well, you say it's inconsistent treatment. What evidence is there in the record that other people were treated inconsistently other than Ipsy Dixie? So, two, Your Honor. First, the association's own articles make quite clear that this river training is not a prerequisite for full registration. That has not been explained by the Coast Guard or by the association. Second, under Baltimore Gas, my client doesn't need evidence. He just needs credible allegations, and then the agency has to respond. What my client has been saying since the beginning is... So, wait, you say... So, what about JA 135, Deputy Pilot Training Phase? This is the association's training program. Point two, during the Deputy Pilot Training Phase, the applicant pilot will work alone, usually alone in undesignated waters, but will continue to make trips in the designated waters of the pilotage district in the company of registered pilots. This is their training plan, and it says, the Deputy Pilot Training Phase includes continuing to make trips, plural, in the designated waters of the pilotage district. You said it's not written anywhere. Why is that not it? Well, the specific number of trips... I want that number of trips. You said it wasn't written anywhere. Right here it says you're supposed to make trips, plural, in the designated waters. And there was a finding that he has never solo navigated a vessel between, just for shorthand, in the designated waters. So, your answer was it's not in their plan. It's right here in their training plan, and the finding is right there. Your Honor, my client has maintained from the very beginning that he did exactly what he was told to do, just like every other pilot did. It's written down right here. Did he have a copy of the training plan? Yes, he has a copy, and he did do additional trips when he was told to do them, just like he said every other pilot did. What he asked the Coast Guard to do was just look at the records of his contemporaries. He didn't have any evidence. He said just look at pilots, and he gave a bunch of numbers that included himself. That's not evidence. Go look at these records. Your Honor, he doesn't have access to those. Okay, then how does he know anybody had the same record as him? Your Honor, because they're his contemporaries, and he knows. They told him. No. Did he have affidavits from them? No, he didn't, Your Honor. He did not. He didn't have evidence of any differential... Your Honor, the standard... Time out. Somebody just saying, I think my friends were treated differently from me is not going to undercut substantial evidence when you have written words of requirement and a factual finding that is not disputed of a requirement. Just saying, oh, someone told me that they didn't have the same thing, should have gotten an affidavit from him. Well, he has his own affidavit, Your Honor. That doesn't tell us anything about... To make a differential treatment claim, that tells us about his, and that's relevant for that. That does not evidence a differential treatment claim. Your Honor, determining whether he's correct is very easy because the Coast Guard is supposed to have these records. Very easy if he comes forward with declarations from these buddies of his who he says all told him that they were treated the same as him and had the same requirements as him. What prevented him from doing that? Your Honor, the problem is that the Coast Guard never gave any response... Because there wasn't any evidence. Your Honor, the Coast Guard never told my client that come back with evidence... That's not how administrative proceedings work. There's no trial judge that says come back with evidence. He sought a hearing and he had a burden to make a demonstration if he wanted to assert differential treatment. That's a burden on him. And that burden is not substantiated by going, well, I think I heard this from my friends that they were treated differently. Your Honor... When he could have gotten the information. Nothing stopped him from getting the information. What the Coast Guard told him when he said everyone else has been treated differently is I'm not going to discuss the status of another mariner. The Coast Guard never said we don't think you're right. Well, for privacy reasons, they're not going to start hauling out records on other people and putting them on the public record when there hasn't been any evidence of differential treatment. Your Honor, that's what the ADA requires. At the very least, the Coast Guard... It requires agencies to rebut arguments that are not substantiated? Your Honor, these are very detailed allegations. My point is that the differential treatment one was not detailed in the leaf. It was an assertion that was completely unsubstantiated. Your Honor, there's a declaration that details this, JA 253-59. What's the declaration? That's Captain Hite's declaration. The Coast Guard has this. He explained the way river training worked is that once pilots were advanced to the deputy phase, they were dispatched. They don't have control over where they go. They go where they're told to go. He went on the lake the majority of this time, and the way training has always worked is that after pilots get their full registration, then they do these additional river trips. That's what he said. Yes. Then the training association said, no, here's our training plan, and this is what we do. He came back and said, no, it's not, but I have no evidence. He is not in charge of the plan. He's one person. He's a student going through it, and he doesn't get to declare what the plan is without evidence other than his own say-so, his own thoughts about this. If he had evidence from other pilots or pilot trainees, he shouldn't have come forward with that. Correct? No, Your Honor. No? The standard is credible allegations. The standard is not that you have to prove inconsistent treatment, and I also think that this court's decision in NT Connecticut is relevant here because this court has held repeatedly that when you have two competing factual assertions, the agency cannot simply say, well, we're siding with this one without providing an explanation. You have factual assertions. That is evidence. You have a case where we have said, when someone just asserts something without any evidence, the agency decision is overturned when the agency points to its own evidence, the evidence before it that says the otherwise. What would that case be? Your Honor, I think that's NGE gas. No substantiated evidence. No affidavit, no declaration, no piece of paper. What I think is inexcusable in this case, Your Honor, I think this is actually significantly worse than NGE gas. There you have two private parties who are making competing assertions about what's likely to happen in the future. That's an inherently uncertain enterprise. Here we have competing assertions about a state of facts in the world that it is incredibly easy for the Coast Guard to figure out the truth. All they have to do is look at records. We looked at the training plan, and it's quite explicit. That was their answer. The training plan says this. That's not what the Coast Guard said, Your Honor. That's what the decision says. No, Your Honor, the Coast Guard said that the association is resolute that you have not done enough work on the river to demonstrate proficiency. My client's contention was not rejected. He did not have evidence that I've required for full registration on all waters of the district. I see no evidence that he's done what the plan says he's supposed to do. Your Honor, the decision wasn't responsive to his argument. He didn't say that I've done all of these river trips, which historically have always been done after full registration. He said that everyone else before me did their river trips after they got registration, and it should be the work of an hour for the Coast Guard to just look at the records. You think you're imposing a standard that if anybody just raises a possibility, then the Coast Guard has to go and research it and prove whether it's correct or not, and that's just not the way it works. You conceded there has to be a credible allegation, and there's no credible allegation if there's no evidence whatsoever to support the contention. Well, Your Honor, his own affidavit, his own detailed allegation, we consider allegations credible in the context of a complaint where, you know. But where the allegation is about disparate treatment involving other people, there has to be some evidence about how the other people were treated. You can't just say it's a possibility and ask the Coast Guard to figure it out for you. You have to have evidence. And it seems to me that the one person that was specifically referenced, Chris Wegler, your client seemed to concede that he had to do additional trips before he was registered. Only after he pointed out, my client pointed out the inconsistent treatment. But there's no inconsistent treatment, in other words, though. There is none. There's no evidence even with respect to the one person that he pointed out. Your Honor, the inconsistency is that my client was not allowed to do those trips. If this were really about the training issue, then they would have said, oh, you're right, you haven't done these trips. That's a whole different claim. So now you're saying that what was arbitrary and capricious is that the Coast Guard should have forced the association to let him do some trips on the designated waters. Is that your claim now? Because that's not the claim that was pressed below or that I even see really being pressed administratively. We certainly made the point that if the problem is that he has to take trips that he cannot take because the association won't let him, that's certainly preserved. That's the essence of our First Amendment claim. And the Coast Guard knew that. So where in the record did you argue that he wasn't allowed to take the trips on the designated waters that were supervised? He asked to and wasn't allowed to. So in his communications with the Coast Guard all throughout 2018, whenever the Coast Guard told him, you have to take this up with your association, he said, the association isn't answering my calls. They won't talk to me. They don't answer my emails. Where did he argue that I couldn't have taken these designated trips that were supervised? Because when he was told, you're out of the program, they said, look, you haven't completed your training and you have a temperament issue. Where did he say, well, I couldn't have taken those trips because you didn't let me? I don't see that in the record. Just one correction. At no point when he was dealing with the Coast Guard through 2018 did they ever say, you're out of the program because of a temperament issue. What the Coast Guard kept saying was that you have to work this out with the association. I counted about ten places in the JA where the ‑‑ I thought there was a letter on, I guess it was March 17th. It was like he responded the next day. I think it was March 18th, actually. March 18th, and then he responded the next day. But I thought that letter kind of explained to him, you haven't completed your training and you have some temperament issues. And then when he responded, he didn't say, he responded the very next day, he didn't say, hey, I wasn't able to complete my training on the designated waters because you didn't allow me to. I just don't see that as part of the arguments that were made. On JA 159, I believe it is, this is where he provides his story to the Coast Guard. Now, personally, the Coast Guard here never asked him his side of the story. When the association said, look, we're going to terminate him, the Coast Guard said, we concur, about 90 minutes later, and never reached out to Captain Hite to ask. True, there were many communications where they said, give us your information, give us your evidence, they asked for it. Well, this is after he reached out to them several weeks later. Before the final agency decision in this case. That's what we were doing. Yes. He was told, give us your information, give us your record. If you have evidence, give it to us. And he provided his training records, which according to the Coast Guard's initial interpretation, satisfied the regulatory requirements. Then the Coast Guard reinterpreted the regulation at the request of the association so that his trips would no longer qualify. And that's what ended up getting decided in Hite 1. This is really the same issue that we've been fighting about for five or six years at this point. He provided everything that they requested. And I think at bottom, the real issue here is that there is nothing that he can do to prove the inconsistent treatment because all the cards are in the Coast Guard's hands. He tried to get his records. Talk to his friends and get an affidavit. I mean, if we were at summary judgment in a civil case in the district court and someone said, well, I have my allegations in the complaint of how other people were treated, but I don't have any evidence yet. It might be enough to get you past the motion to dismiss, but clearly would not be enough for summary judgment.  I agree. So to obtain relief on a petition for review, conclusive relief, you have to meet a summary judgment standard of evidence. So his allegations here in an affidavit rather than a complaint are not enough alone. If there's not evidence that someone could credit of differential treatment, he needed summary judgment type evidence. And, Your Honor, if this were summary judgment, then he would have those documents. He tried to get them in height one, and the Coast Guard said, absolutely not, you can't do that. No, no, no, because this is, there's not discovery. You come in on a petition for review, there's no discovery in this court. Right. You come in with your story. Now, either you get your evidence and have it, or you don't. This isn't a claim about getting discovery or not. This is a petition for review from a final agency decision that comes directly to this court. There is no discovery. There's an administrative record. And so he either puts information into the administrative record, or he does not. And if there's no facts there to substantiate differential claim, we don't, we have no way of knowing other than what the administrative record shows. And we see in this record the Coast Guard saying, give us what information you have. And he never, what you say would only take the Coast Guard a little bit of time, would only have taken him a little bit of time to get some declarations from his friend. Your Honor, he can't get declarations from his friends because they want to keep their registrations and they don't want to run afoul of the association. Where's that? And where's that evidence in the record? Well, he's talked, in his declaration and in his complaint, he explains that he has seen people retaliated against before. His complaint isn't part of this case because we are an administrative review. All right. So, in his declaration. It is in his declaration, Your Honor. That he tried to get declarations from my friends about their training, but they wouldn't do it because they were afraid of retaliation. Please show me where that page is. No, there's, the declaration says that he has seen retaliation before and. . . That doesn't mean, that doesn't mean he didn't even try. Is there evidence that he tried to get declarations from these people?  Okay. Then that's a very different situation. I think. . . So he doesn't have the evidence you need. Your Honor, what's missing, and I understand the perspective, and I think what's missing, to make that argument work, is that there is no place in the record where the Coast Guard said, you haven't shown us that this is true. Show us something. What the Coast Guard said was, basically, we don't care. This is all between you and the association. It is not our job. And there is also documentary record evidence showing that, or at least strongly suggesting that my client is correct. The association's articles say that the river training is something that is not a prerequisite for full registration. That has not been explained. Where is that? Where are you looking at? That is at JA 143. It describes a river training plan which will be offered in order of seniority, including to fully registered pilots who are working on the lake. Now, it's possible at JA 143, it is possible for somebody who's not yet fully registered to do the river training plan, but only if everyone with more seniority than them, including fully registered pilots, has done that training. That's the training that they're talking about here. So it cannot be, according to their own documents, a prerequisite for full registration. Was he an associate member when he got his deputy pilot? That's correct. Okay, so unless the program has first been offered to associate members. That's right, but it says that full members who haven't done the training yet, meaning that it is possible to become a full member, a registered pilot without having done the training, they get to do it first. So it's descending order of seniority, and that includes fully registered pilots. But then again, we're missing the point where he said we don't have evidence that he tried, this is what Judge Pan asked you about, that he tried to get it, and they said, no, you can't have it, this training. Well, we have evidence. He didn't even ask the Coast Guard to see the records of the other pilots. All we asked the Coast Guard to do was look itself. He said, look, these are records you're supposed to have. You can just look. So he didn't have those records? Of the other pilots, that's correct. Didn't they just go look at other records? I don't have any idea what they show. Well, he knows because he's been in this program working with these people for years, so he knows the way it works. But he's saying the Coast Guard can figure out, can prove it very easily, but the cards are all in the Coast Guard's hand. And it can't be rational decision-making to say, look, you have a very detailed allegation here, but the only way you can prove it's true is if we open our own files and take a look. And you know what? We just don't feel like doing that. When a party comes forward with these kinds of allegations and there is a factual dispute between two third parties, the answer cannot be under NT Connecticut that, well, our position is that this party is always right and you are always wrong. Particularly when one of the parties says, look, there is a very easy way to determine who is correct, and the agency just says, we don't want to do it. I just want to note the thing that you were pointing to at JA143, that's for associate members who are registered for the lake portion. So they're not people who have been already registered for the river. Correct. The way it has always worked, yes, and the way it has always worked is that people get a full registration and then they go on the lake pool. And then as they work their way up in seniority, then they get moved over to the river pool. But fully registered pilots were working full-time on the lake, having not yet done the river training that the Coast Guard had. They were registered for the lake, not for the river. That's correct. I don't see how that proves your point. You said that this proves that people could be registered without their river training. He was trying to be registered for both the lake and the river without having the appropriate river training. No, Your Honor. He wants a full registration, which has always been offered initially just for the lake. And he would be happy to have that because that would like him more. I'm just wondering how it works based on this record. Based on his – he explained this in a lot of detail. On JA 253 through 59, this is how the training has always worked. And he just wants to go to the next step where he gets to work full-time on the lake and then, you know, the river training. We might have to have a fight about whether he gets to do that. But he doesn't get to explain how registration works. The laws and regulations dictate how registration works. What law or regulation says that you can be fully registered just for the lake and it's irrelevant whether you have registration for the river and be fully registered, which is what your client requests? That's not in the regs, but it is past practice. And there is documentary evidence that this is how it worked. For instance, on JA 130, this is when he finished the first stage, the applicant pilot stage and advanced to deputy. The president of the association said he's ready to be registered for the lake and to work on the lake. And the Coast Guard said, great, that's fine because that's how it's always worked. So a lot of this is just sort of informal practice, the way things have developed over time. The regs are not always up there. So he's registered, but he became a deputy pilot. He's not registered, but he's allowed to have unsupervised access to the lake as a deputy pilot, but that's not a registration, is it? It is. He received a temporary registration as a deputy pilot. And what he wants is basically the same thing. He just wants it to be a permanent, or rather a five-year registration. But he wants a registration for both the lake and the river. No, Your Honor. He wants for the whole district, which is the lake and the river. But the practice has always been that you get a registration for... No, my understanding is he could ask for a registration for just the lake, but that's not what he asked for. He wants a full registration for the whole district, which is the lake and the river, but he did not complete the training for the river. No, Your Honor. He wanted the registration that everyone was getting at the point that they finished the deputy pilot phase, which was it was a full registration, but they always told the pilot, this is for the lake. It's not in the regs, unfortunately, because this is always... Right, they had a scheme inconsistent with the regs that said, we'll license you to go on the river when you're not yet trained to do so. That's your position? No, no, no, absolutely not. But you just said that you'll get the full license for a river and lake even though you're not yet trained to go on the river. That's what you just said, that that'll all come later, but you'll go ahead and get the full registration before you're trained. That's what the articles of association, that's what the articles say, Your Honor. No, it's not what the training plan says. But it is what the association articles say, and it is the way things are going. There's more reading of it, but it's not what the training plan says. That is at the JA-143, Your Honor. We just went over this, that's not what it says. But it refers to people who are registered separately for the lake and the river. There's nothing in the regs themselves. But that person can be registered for the lake. I understand that. But he wants to be registered for the lake and the river, the whole district, and he didn't complete his training for the river. This doesn't speak to what he wants to do. Your Honor, he's applying for registration as it was practiced throughout the time he was there, which was that when you get your full registration, it was always a lake registration. That's how it worked for everybody. What you're saying is really disturbing, because if that's true, that's extremely unsafe, and it's really hard for me to believe that the Coast Guard is running this training program this way, given what this record reveals to be how hazardous it is to navigate some of these waters. The fact that they would issue somebody, you're saying that it was common practice, to issue people a registration for the river, for the lake and the river, but say, but don't really use that, just use it for the lake. I cannot believe that that's true, and if so, that's a huge problem. No, they were not telling them that they are allowed to go on the river. But they gave them registration for the river, which means that they're allowed to go on the river. No, Your Honor. The registration is just the Coast Guard telling them, you know, you're allowed to do this, and they tell you, you have to go on the lake, and then you do your training, and then we'll recognize that you're trained sufficiently for the river. So you're just repeating the same thing that I just said was very disturbing. You're saying that they're giving registrations for the lake, but telling them, don't use this, only use it for the lake until we finally train you for the river. I cannot believe that that's what they're doing. I don't think it's disturbing if you understand how this works in practice, Your Honor, which is that the pilots don't have any say where they go. What evidence of in practice do you have? Sorry, what? What evidence of in practice is in the record, other than your client's FASA? Tell me one other person who was given a full registration for lake and river in this record without having been trained to do the very hazardous work on the river? I don't think anyone has, and I think that's the point, Your Honor, that they were not saying that this is a registration for both. They were saying you have a registration to work on the lake, and the association, Your Honor, tells you where to go. So all he wants is a registration for the lake? Absolutely. And then we can have a fight down the road about it. You said, I'm getting incredibly confused, because my understanding was when Judge Pan asked you, does he just want a registration for the lake? He said, no, he wants the full registration, lake and river. No, he wants a registration for the lake. And that's the way it has always worked in the past. Why did he apply for a registration for the lake? Why did he apply for full registration? Why did he apply for full? Because they've always just said, I finished the training, so I've applied for full registration. So you keep saying they always say always, but I just don't see that in his record. What document can you point to other than his affidavit that says that you can get a full registration without having, undergoing any treatment, training on the river? Well, it's not no training. It's just the complete training that would allow you to solo navigate. He has done river training. He just hasn't done as much as he would do if he were going to be a solo pilot navigating the river. But I think that, I keep coming back to it, but JA-143 makes very clear that you can get registration for one and not the other. And that's all he wanted. It's valuable to him, because then he can work on the lake, and he can make a living. So why did he apply for registration on the lake? That's what he understood himself to be doing, Your Honor, because that's the way that this has always worked. He applies for full registration, and then the Coast Guard would give it to you. Then why isn't there a single letter? Maybe I missed it in my review of the appendix. Why doesn't he say, I don't have to do river training, and I shouldn't have to do river training, because all I want is full registration for the lake? Where does he ever say that? He makes quite clear, I think, in his administrative appeal and in his affidavit, that the way things worked in the past and the way he wants it to be treated, the way he wants it to be treated, is that he can get his registration, and then he can do his full registration, but for the lake, and that he can do his river training after. He's never argued that he gets to navigate the river without having done these trips that are referenced in the association's own articles. Clearly, this is something that was practiced at least through this time period. Let me make sure I understand at least what you're contesting and what you're not contesting. JA-271, I asked you about that statement. Are you contesting whether there was substantial evidence in the record for the director to make the finding in that paragraph that Captain Hyte has comparatively little river experience and has never solo navigated a vessel between Snell Lock to the east in Cape Edge? We are not contesting that, and we said that in our brief. The argument is that that was always something that people did after they got registered and started working full-time on the lake. JA-107, you wrote a letter to the Coast Guard that said, based on Captain Hyte's affidavit from the Hyteland litigation, he completed 12 round trips on the designated waters, the river. That's true. 12 round trips on the river in 2016 and 2017 when he was a deputy. Some of it was applicant, some of it was deputy, I believe. That's not what it says. It says in 2016 and 2017. Did he do 12 round trips on the river in 2016 and 2017? Yes, he did. So he's already done the trips as a deputy? He hasn't. That's correct. He has done these trips. As a deputy pilot? Yes. Were they not supervised? They weren't supervised. No, they were supervised. The difference is that the way this has worked in the past is that these trips are done more as an observer in this stage when you're a deputy. And then after you get registration, then he would take command and actually have his hands on the controls and be the one doing this all with someone else just watching. That's what you're saying. You're saying in this letter that he completed the training, which he didn't just sort of stand, which isn't standing there and observing. It's doing the piloting. And you said here he did it 12 times. And then you're agreeing over here he hadn't done it. He hasn't done it more than once. And so I'm getting confused as to what's going on here. I thought we all agreed at the beginning he had not completed the statement that Judge Wilkins read from the Coast Guard Emerson decision that he hadn't completed the trips. But you had previously written that he had done 12 trips as a deputy on the river. That's correct. As a pilot. Were these qualifying training trips? These are the trips that are referenced in the training plan. These are the trips that deputy pilots have always done. The difference is that the practice has always been, and this is detailed from 253 to 259, that after you get the registration, then you do different river trips where it's really you on your own and it's more like your driving test for someone there actually watching you. What did he do on these 12 trips you were referencing in the letter? He just observed? Primarily. He's on the bridge. He's talking to the people. He's learning about the waters. But he's not the one with his hands on the controls. Well, then why did you tell the Coast Guard that he'd already met the training requirement? Well, we did. We have since how you want. Is that the training requirement? That's not what's referenced in the association's articles. Here's how I understand your argument. Tell me if I'm wrong. You can see that for purposes of the training, he made only one trip that was supervised on the river. That's in the record. It seems to be uncontested. And so based on the Coast Guard approved training plan, he didn't comply with the Coast Guard approved training plan because it says you have to make trips plural in the designated waters, which is the river. So he didn't comply with that. But your argument is even though he didn't comply with the letter of the training plan, there was this whole unofficial practice, and he has not been treated in accordance with the way other people were treated under this unofficial practice. Is that your argument? No. I'm sorry, Your Honor. Our contention is that these trips he took are exactly what's referenced in the plan, but that what the Coast Guard is referring to now is an unwritten additional requirement and that that's what is referenced. What's the unwritten additional requirement? That's what's referenced in the association's articles when they talk about this river training plan that goes down in order of seniority. And in the past, and again, this is detailed in the declaration. I'm sorry. I'm trying to understand your argument. Okay. So you're saying that it's true that he only did one supervised trip in designated waters and didn't comply with the Coast Guard approved training plan that's in the record at JA? No. But there's this river training program, there's this completely different training thing which made it hard for him to do that because he was not an associate member who was temporarily registered for the lake, which would have had priority. No. Sorry, Your Honor. We are not conceding that he failed to do anything that was in the plan. We think that those 12 trips are the continuing river trips referenced in the plan. What we're talking about is the unwritten requirement that he do solo navigation trips with someone watching him. That's not something that happened prior to full registration until after this case. It was not the way things worked while he was there, and that's what's referenced in the association's articles. So it says, the approved training plan says, he has to continue to make trips, plural, in designated waters in the company of registered pilots. They're saying he only made one. You're saying, no, he made 12. So why is that? I mean, my understanding was that was not a contested fact that he had only made one. Where is it that he says, I made 12, and you're wrong about me only making one? Where is that in the record? I don't remember seeing that. Well, I don't have the JA for that. It's certainly in our brief. Where in your brief? I don't have that to hand.  I think that the key point is that it wasn't- Provide a side on rebuttal. Sure. Is that it wasn't, there wasn't a dispute about whether he took the trips that he said that they took. The dispute was whether he had done enough solo navigation of the river to be able to take command by himself without any observation. Right, so they read the trips of the designated waters to be solo navigation with a supervisor. And you read designated trips in the water to be just being on the water with other people observing. Right, and what he's always said is that this is how it has always worked, that you go mostly as an observer while you're a deputy pilot, and then afterwards, then you do the solo navigation. But it's a pilotage program. It's a pilotage program. So make trips to the designated waters. You have to be a pilot when you're making trips in the designated waters. You can't just sit on the boat. That doesn't count as making a trip. You can't just go on a pleasure cruise on the St. Lawrence River, and that wouldn't be making a trip. He has to be piloting. Of course not. No, these are still educational trips. For one, he is a pilot. He's got his temporary registration for the lake, he's got his license, and he's going there learning about it. He's interacting. But if it says make trips in the company of a registered pilot, why doesn't that mean you're piloting and somebody is supervising you, a registered pilot is supervising you? Because that's not the way it had ever been interpreted before. Because the constant practice, and he has always maintained this from 2018 to today, is that these were primarily as observers. And that's not worthless. If you're up there on the bridge, you're talking to people, you're getting to see this is the river they're going to be navigating, you're learning a lot. You just aren't yet the one with the hands on the controls issuing the orders. So that's like saying that, you know, like one of my kids should be able to get a license to drive a car after they've, you know, made a minimum number of trips, you know, sitting in the front seat watching me drive, but they've never solo navigated under my or anyone else's supervision the car, but they should be given a driver's license to go drive because they have taken the requisite number of trips watching me push the brake and the gas pedal and turn the steering wheel, et cetera. That's the way you're saying that this works? You know, the problem with that analogy, Your Honor, is that my client is already a licensed pilot. He's registered for the lake, and he's been a captain of huge ships on the high seas for many, many years. There's no dispute here that he has the skills to do this. What he's learning is just these specific waters, and he's learning a lot by being there on the ship, seeing the waters, interacting with the people who do this regularly. It's not a worthless experience, and he's not even arguing that that alone. No one says it's worthless. The question is whether it's qualifying. Well, it qualifies under the plan at least. Can we just clarify? So the district court made a finding, it's a JA-293, that he made two one-way trips on the St. Lawrence River in the 22 months after May 2016, which is when he was a deputy pilot, and only one of those trips was supervised. Therefore, only one of them would count for purposes of the training plan. The other trips apparently were from before he became a deputy pilot. If that's not true, maybe on rebuttal you can tell us where in the record. I think they were in early 2016, so before he got the... Some of those were before he became a deputy. Okay, so maybe you can tell us on rebuttal where it says that. Anything other than these two were when he was a deputy pilot. A key problem, though, is that he doesn't have any say over where he goes. That's not how this works. That I'd like to understand, too, because it says here that he chose to be on the lake because he was making money, and he didn't choose to do his training on the river, which I guess you don't make money for the training. Well, that's what the association said, and it's not the way it's ever worked, and it's still not... If you look at the letter that the association sent to the Coast Guard, JA-130, it says he will be dispatched because they have a dispatch organization in office. They run the tour de role, so they tell people where he goes. No, I understand that. He wants to be on the role, and he wants to be dispatched on the lake because he makes money, but then he has to take the initiative to complete his training on the river because I assume he's not getting paid for the training trips, but he has to make that happen for the training. They don't dispatch you for training unless you ask for it. No, they do dispatch you for training. He always went when he was told, and everyone else did as well. So you're saying the way it works is when you're a deputy pilot and you need to fulfill this training obligation to make multiple trips on the river, you just wait until somebody dispatches you to go on the river for your training? That's right, because you can't take yourself off of assignments. You go where dispatch tells you, and someone else has to say, okay, I'm on the training committee, I've got some time, I'll take him on this one. You don't have to sign up for it. No, no. You do nothing but wait. The training committee is supposed to tell them, and this is what the plan says, they're going to tell you what you're supposed to do. There's nothing – I think that this is all downstream of the really fundamental issue, which is that – So where in the record did your client argue that he was waiting for somebody to tell him and dispatch him to do his river training? I am not sure if that's in the record, Your Honor. I think that this is a little bit beside the point, because we would know how all of this works if the Coast Guard had taken an hour to look at the record. Hang on a second. That's a different argument. We've got a lot of different arguments here, and we're trying to understand them. So if I understand it, and tell me if I misunderstand it, Coast Guard has this description of how this process works and what's required. Your client has a different understanding of what that process is, what's required, and how it works. There seems to be a real clash. No. I think that the clash is between my client's understanding and what the Association has represented to the Coast Guard. The Coast Guard has its requirements and its understanding of what's going on. But I'll even take your version of it, okay? The Association has its version, and your client has its version. And the Coast Guard has credited the Association version, and we have some written documentation and evidence from them. You may disagree with, you may read things differently, but we have evidence on that. But we don't have evidence beyond your client's say-so, which would not be sufficient for summary judgment as to, well, what really happens in the real world if you get these full licenses, even though you're not fully licensed and you still have to do the training? Given our standard of review, how can we say the unsubstantiated understanding, we can assume it's genuine, but it's just not evidenced, can override the Coast Guard's crediting of the Association's description with documentation? Before we even get to the standard of review, I think the threshold is you have to rationally address these allegations at no point. So we start with standard of review, and that's how we even analyze whether there's a rational address of something. And part of that standard of review is, is there any evidence in the record? I'm sorry, I misspoke. I mean, the standard of review, there are two issues here. One is arbitrary and capricious, and the other is substantial evidence. I don't think we get to substantial evidence until we have an actual explanation that we can make sense of. Okay, but I would like an answer to my question, which really was a substantial evidence question about they said, he said. And because there is a declaration from your client, so that's correct understanding, and the agency was presented with two alternatives, and it credited one over the other. And one had documentary evidence, and one had a declaration. And what in our standard of review would allow us to say the Coast Guard should have credited the unsubstantiated declaration? So I agree. That's critical here. Yeah, so to be clear here, we're not saying the Coast Guard is required to credit what my client said, though I do think that the JA-143 is documentary evidence according to my client. But what we're saying is that the Coast Guard has to have a rational explanation for why it's crediting one account over the other, and I think that is particularly true in a case like this where the Coast Guard has the answer. It has this information, and it is super easy to find out. It can't be rational APA decision-making to say, look, we have a dispute of fact, and instead of just opening a file... Oh, we have a dispute. Let's be crystal clear. We have a disputed allegation and the documentary evidence from the association. There is no...because we're struggling with your JA-143 point, so let's say... That's not a claim done for you. Okay, so... But it's something. Well, that's debatable on how you read it. So I don't want to...we cannot equate this as a summary judgment dispute of evidentiary substantiated facts because we just have a declaration of this is how I believe it always works, which would be perfectly fine for a complaint, but not for summary judgment. And so I'm struggling with how we're supposed to...because your argument keeps coming back to... frequently your response is, well, here's how it's always worked. Here's how it's always worked. And all we have is one person say so, and I don't know why the Coast Guard would be compelled to accept that. I think it's essential here. If this were something that is unknowable that the Coast Guard couldn't possibly figure out... So an allegation without substantiation obligates... you want us to write an opinion that says that allegation without substantiation, but we assume in good faith, obligates the agency to go find more evidence and gather witnesses and documents. It's not necessarily a huge open-ended investigation. I didn't say how unopen...you're saying...tell me what's wrong about what I'm saying. You said the obligation...you said many times, it won't take long, it's easy. So that's an obligation on them to go gather evidence. That's the opinion we would have to write for you to win, your client to win. At least...I think it's a flexible standard. If the requirement...if figuring out the truth would be a huge burden on the agency, then it might be reasonable to say we can't possibly figure that out. But from the very beginning, you said this is really easy. You just have to look at the files. And the Coast Guard never said... Is there like a legal case or something that supports your... if it's easy to do, they should do it, and if it's not, they don't have to. I think this is implicit in our... I don't think that you can have reasoned decision-making that says we have a factual dispute and I could just look at this to figure out who's true. Who's telling the truth, but I won't. But I think that NTA Connecticut is the case that says that you have to at least articulate a reason that you're crediting one over the other. We're not even saying that they had to... we're absolutely not saying that they had to credit what my client was saying. We're saying that if they're going to discredit it and credit someone else's, they had to... Can't they discredit it and say you haven't offered any evidence? Well, they didn't do that, Your Honor. And that would be a different case because then we would have done more. If they had said, look... Back in 2018, if we were... If they said you haven't offered any evidence, you don't get a round two. If in 2018... You don't get a round two? I'm sorry, we're talking... We review the final agency decision. I'm not reviewing prior stages. Final agency decision. You don't have evidence. And the final agency decision doesn't say there's insufficient evidence of this past practice. It doesn't say I find what you're saying not credible. It just says this is what the agency said. It basically ignored everything that Captain Heidi has been saying since 2018. No one has ever given a response and said, well, we don't have enough evidence that this is how it works. If you can show us, maybe it's different. They've never said, you're obviously wrong. They've never said, we looked at the records and we don't think that's how it works. Let me see if I can skim the cat a different way. The regulation at issue here, section 402.220, the registration of pilots regulation. You're not attacking that regulation as invalid or anything like that, right? Isn't it a reasonable reading of that regulation when it says that an apprentice pilot must complete a minimum number of round trips and where it says a minimum of five round trips are required over the waters for which registration is desired? Isn't it a reasonable interpretation of that regulation to say that there should be at least one round trip over the river since that's part of the waters that you are requesting registration over? Your Honor, the answer to that is really easy. HITE-1 decided that. It decided that under the regulations, Captain Heidi satisfied that minimum trips requirement. That's why no one's talking about minimum trips requirement. HITE-1 didn't decide that issue with respect, sir. HITE-1 decided an issue was like whether he can take a test. It didn't decide whether he could ultimately and should ultimately be registered. That's true, but the reason he could take the test, what the agency was arguing was that he hasn't done the minimum trips under the regs, and Judge Mehta rejected that as contrary. He rejected their date from which you counted trips. They had a different date. Regulation says from date of application. They had a different interpretation of what application meant as opposed to his application. That's a completely different question. And are we bound by what the district court says? Well, I think it's res judicata as to these parties at least. They didn't appeal that. Well, hold on. Judge Mehta talked about minimum requirements, and now we're talking about requirements for registration, which is more than the minimum. So we're talking about two different trip requirements in HITE-1 versus now, correct? Well, yes. They are not talking about the minimum trip requirements in the regs at this stage. Right. They are talking about something that they still cannot pinpoint. Correct, but just HITE-1 doesn't resolve what's before us today because we're talking about the number of trips you need to be registered, not the minimum number of trips that you need. Let me, like, we're not playing poker here. I'm just going to tell you how I interpret the decision on appeal by Director Emerson with respect to training. What I got from all of this, after trying to go through all the briefing and everything else, is that ultimately what Director Emerson says is, like, look, it appears that you haven't solo, that Captain Hite did not solo navigate this part of the river under supervision, and at a minimum he needs to do that at least once to be fully registered, and he hasn't done that. And you're not contesting that finding. And whether or not others got full registration without having done it or not, he doesn't address that. But, you know, under the rule of prejudicial error, I guess what I'm trying to figure out is that even if the director said, you may be right that 10 other pilots have gotten full registration without having done a solo navigation trip on the river, I read this regulation as requiring that to be the case, and you haven't done it. And I'm not, you're not qualified, and I'm not going to give it to you. And, you know, maybe we'll have to deal with these other people. But I don't know of a case that says that if a government official reasonably interprets a regulation to require something and you haven't met the minimum requirements, that it is arbitrary and capricious decision-making for them to not let you get your license when you haven't met the minimum requirement that it is reasonable for them to have required you to meet. I understand, Your Honor, so two points. First, he didn't ground it in the regulation itself. He didn't say that this isn't meeting the minimum trips requirement. So we don't need to consider that. But the key issue here is that he didn't... We don't think that he considered the regulation that governs the decision? It's not, well, I think there is a good reason for him not to base it on that because of what happened in Hive 1. There's a reason the government isn't talking about the regulatory minimum trips requirement anymore. We already litigated that. And they didn't appeal it. Now, I think that if he had written an opinion where he said, wow, it looks like none of these guys should have been registered, well, you're not going to get registered, but we might have to look into that. That would at least be an effort to comply with Baltimore Gas where you're addressing the inconsistent treatment. But he didn't do that. We're not suggesting that he's bound by agency precedent to never change policy. What he has to do is engage with what past practice has been and offer some kind of a reasoned explanation, and he just didn't do that. It seems to me that once you concede that that reading of the regulation is reasonable, your argument fails. Your Honor, we don't. We just think it's decided by Hive 1. I think the reg is pretty clear that it says that trips have to be made in the company with a registered pilot after application has been sought. And those requirements are clearly satisfied. I think that's what Judge Mehta said. And they didn't appeal that. So regardless of whether this Court thinks that's the right interpretation, I think the agency at least is bound in this proceeding. It just seems to me that at bottom you're relying on unwritten, informal understandings that are not clearly laid out in the record anywhere. Even aside from the fact that they're unwritten, unofficial, they're nowhere laid out. Like I don't see, and tell me if I'm wrong, your client actually saying, this is actually the way it's always been done. There are some vague references to him being treated differently, but there's never a specific sort of outlining of what he thinks the process is supposed to be. If it's there, tell me. Yeah, I mean, I think if you want the most detail, it's from JA 253-59. That's where he goes through how this has always worked in the past. And I agree. This is unwritten practice. But the problem is that's all the other side has too. I mean, at most they can say continue to take trips, but they know that what the trips are supposed to look like is not specified, how many is not specified, and they haven't grappled yet with the river training in their own articles. Whether you think that's conclusive or not, it doesn't fit with the way they are arguing things have always been, and they don't have any explanation for that. So, you know, paragraph 96, I just went to the page that you told me to go to, but it seems to contradict what you said about they're just waiting to be dispatched to river training. It says, after pilots advance from applicant pilot phase to deputy pilot phase and receive temporary registration, we rarely have time to take trips on the river working primarily on the lake, particularly when rest requirements were enforced on training trips. Prior to 2016, this was not enforced. That doesn't say that they don't dispatch us. He's saying that he doesn't have time. It seems like it's incumbent on the deputy pilots to plan their river training despite their commitments on the lake, and that's consistent with the findings in the record by his superiors that say he prioritized the lake training because it was paid. I think it was incumbent on him, it seems, to sign up for the river training. I can understand that. I don't think that that's clearly stated one way or the other. The way he's explained this to us, Your Honor. So where in here does it say we are waiting for people to dispatch us? I don't think it does, Your Honor. So that's not in the record anywhere? I'm not aware of that being in the record, Your Honor. Okay, so we can't consider that. Any other questions? Kept you up for a long time. Thank you, Counselor. We'll give you some rebuttal time. All right, the Justice Department now. Mr. DeSantis. May it please the Court, Josh Santos on behalf of the United States. I'll just start with what is at issue here, which is a request for full registration to be able to pilot by himself in the waters of the St. Lawrence River, which are particularly hazardous for the reasons that the Coast Guard explained in its decision. And what the Coast Guard said was you haven't met the requirement in 420.220B2 that you complete a training program by the pilot association, their local experts in those waters. During the second stage of your training program, the deputy pilot stage, he only had a single half round trip that was evaluated, and that wasn't enough to show that he continued to make trips, plural, demonstrating his proficiency. And the Coast Guard just wasn't going to authorize someone to pilot by themselves in this particularly dangerous area when they haven't demonstrated their proficiency. On the other arguments we found in our brief, I welcome the Court's questions. What's your understanding of how that works? Your friend on the other side says that in order to make the trips on the river, they're waiting to be dispatched there. Is that the way it works? My understanding is the dispatch has to do with the lake portion, because when they're in the deputy pilot stage, they have the temporary registration to work on the lake, and they go out on their own, so they're dispatched normally. They get their pilot earnings the same way that other pilots do on the lake. So that's what the dispatch is about. But they would have to request to be put on training trips on the river. But there's no dispatch on the river for people who are not full members. That's my understanding. Or at least temporary members. Right. My understanding is you seek out training opportunities, and that's what the Coast Guard was referring to in the decision saying you focused on the lake and you didn't make time to complete trips on the river. What do the regulations say about how many solo navigation trips on the river are required to get the full designation? So there's the minimum trips requirement. What's at issue here is the training program, which is also you're required to complete it under 420.220b2. The training plan has the two stages. So in the first stage, there's a certain number of required trips. The second stage at issue here says you will continue to make trips to demonstrate the proficiency, and that's the part that the Coast Guard said was lacking here because there was only one single half round trip that was evaluated. Just so that I'm clear, what regulation are you citing here? So the regulation that I'm talking about is 46 CFR, I think it's 420.220b2, and then the training plan is the one we've been talking about from pages 130 to 137 of the appendix. So you can see on page 135, that's the requirement that's at issue here. The applicant will continue to make trips in the designated waters, plural. And let me just emphasize, this program, it's basically like an apprenticeship program with the experts in these local waters. So, I mean, some people learn faster than other people, and the training will be given more and more control gradually until the program sees that they can handle it. So it's not that number of trips that you have to make, but it's more than one because it says trips, plural. It's more than one. This would be a harder case if he had made three trips. Potentially, right? It would still be squarely within the kind of expertise of judgment about safety. No, I didn't say that, but it would be a harder trip because he's made less than one and this says trips. That's right. What are we to do with his declaration, which says at great length, the trips I did before I became a deputy on the St. Lawrence River should count? So that was during, I think, undisputedly during phase one of his training. I understand, but why shouldn't that count? He said that's what's always counted before. Why shouldn't those count? Do you do something different once you're declared a deputy pilot? Do you have any different role piloting than they would have had as an applicant and those trips he did as an applicant pilot? So my understanding is that during the applicant pilot phase, they're mainly observing, and then the deputy pilot, they gradually get more responsibility with the goal of them being able to solo pilot. You can see on 137 of the appendix, I think those are the standards of evaluation, and you'll see that it references – Sorry, are you talking about their training plan? Yeah, at the end of the training plan, there's a standard for the grades that you can get, and those reference ability to solo pilot. I'm sorry, what page are you on? 137, I believe. I must have written it down. But those standards, those are basically the way that they would be evaluated, right? They would get a zero if they didn't know what they were doing, a one if they're just adequate, and a two if they demonstrate really great and exceptional knowledge of all the hazards. And there you can see that – So I think the only one that talks about soloing is excellent performance, which isn't required to get your license. The other two simply talk about acceptable proficiency, little coaching, understanding of critical areas doesn't mean that you've piloted through them. Well, acceptable says you have to provide palliative services unaccompanied. You have to display the skills to provide palliative services. Right. The goal here is to get the person ready to be on their own by themselves in this river, and as the Coast Guard explained, this river in particular is dangerous. Displaying the skills and knowledge to do something isn't the same thing as doing – I'm just contrasting one and two, which actually says they've soloed under supervision, between two being excellent and one acceptable. Do we know that it displays the skill and knowledge to provide palliatives? I mean, people supposedly on a bar exam display the skills and knowledge to be a lawyer even without actually practicing law to pass the bar exam, and that's different from saying they've soloed and handled a case. Right. What I'm saying here and what the Coast Guard said is the single half-round trip did not show that you have the adequate knowledge and experience and ability. Why would they just look at that one and not also look at what they did as an applicant? Couldn't that show skills and knowledge too? So there was a decision made to promote him, right? So he was an applicant and then there was a decision made, you've done good so far, we'll promote you to deputy pilot, the Coast Guard approved that, and he was deputy pilot. Now he's in the second stage, and now he has to show that he's going to learn enough to be able to go by himself. What I'm trying to understand is that, so you say during the applicant stage, when they're on the river, because that's what matters here, they're not really piloting, they're just observing. Do they do any piloting during the applicant stage? I don't know that it says they can't. I think primarily they're observing, and I think that's what has been admitted that he was doing it. The Coast Guard thinks that based on what? That's my understanding based on competition.  And then? And also, it's admitted here that he was only observing in the applicant pilot stage of his training. Right, so all this stuff, this makes perfect sense, but it doesn't seem to be written down here. Yeah, well, the part that's written down is that he has to continue to make trips to show his proficiency, and he had only half a round trip, only one half-round trip that was evaluated, and that was not enough, and that's perfectly reasonable. What about his argument that that's not how it's done, that people get their full registration? You count all the trips they've done since they first applied, the applicant and deputy. That's how it's always done. And then, of course, I'll get more training after that, but you count everything cumulatively. His central argument is, here's how it's always been done, and he names people in his declaration, and where is the answer in the record to the, no, that's not how it's been done? I can't tell from reading the decision whether this is a new interpretation or the one that they've always applied. So I think that this is the training plan that was approved by the Coast Guard, and there's obviously two stages to it, so that means that there are two different parts of the training. The person is promoted from one to the other. So in the second part, continue to make trips means more trips, not the same trips. You continue to make trips, more trips. So the bottom line here is just that you didn't do that during your second stage, and I'll also just note it's very implausible to think that someone would get full registration, which means authorization to be piloting by yourself in the particularly dangerous areas that we're talking about here without having had more experience and done more trips during the second stage, which is supposed to be leading up to being able to do things on your own. So what about Baltimore Gas? Your friend on the other side says, look, it's not reasoned decision making where he points out that he's done as much training as other people who have gotten a full designation, and he gets no response to that other than, you know, we're not discussing other people here. He says Baltimore Gas requires an investigation and a response. So I'm not familiar with the particulars of that case, but I think what he's referring to is just Pat Casewell saying where the agency is departing from its own prior decisions. I mean, that is not what he alleged, and as was pointed out earlier, all of the references to other people, first of all, they happened before height one, and it was about whether they can take the test issue, right? And then later, I think there was only one reference to Wheatley, which was pointed out earlier, and there, even there, that person was required to take more trips before registration. So there's really nothing, nothing spelled out, no person with a particular number of trips that was comparable to him. No one that he says also had a single half round trip on the river and then got authorization to go on their own. So you're saying that when he mentions the, you know, 10 other pilots or however many it was that he says were treated differently, he only, with respect, he was only saying that with respect to they were allowed to take the test. Yes. Whereas you're not allowing me to take the test. I think almost all of the citations that they have are to parts where they were making an argument about the test. I think there may be, there may be one about Wheatley that came later, and in that one it's the person that he admits was required to take more trips. But the idea that someone could get full authorization to pilot on their own and then do their training later, it's just not supported and it would make, it would not make sense. Well, how many trips are required in order for a person to be qualified to obtain their full designation or full registration? So under the completion of the training, which is what we're talking about here, there was no specific number, right? It's kind of a qualitative thing. If someone had been on this river like as a master, not a pilot, for like 20 years and then they do this, maybe they need fewer trips. If someone is brand new to the area and they may make some mistakes, maybe they need more trips, right? But it's a qualitative evaluation like an apprenticeship program where they gradually give over the controls until they see, okay, you understand how to do this on your own and we're confident that you can do it. But where is the answer to his declaration on J. 254, paragraph 98? He says only after a pilot was fully registered was he allowed to pilot a ship on the river under an experienced pilot supervision. That's the very requirement that here was imposed on him to get full registration. And he said this is not about taking the exam. This is about getting full registration before you're allowed to start piloting up the St. Lawrence River, given how hazardous and dangerous it is. This is his experience. Where is the answer to that? So the answer is the Coast Guard approved training plan does not say that. It says that you have to continue making trips as a deputy pilot. So you've got a conflict. Right. Where's the resolution of the conflict? Well, the Coast Guard applied its approved training plan. Right. So, I mean, the idea that you could get – and I think the decision actually says I'm not going to risk safety by approving you before you complete training. Right. Like you're saying all these things about you being able to do that. I'm not going to risk that. The Coast Guard approved training plan says you've got to keep making the trips. Yeah, but the argument in this case is he did the same thing everybody who authorized five previous times had done. So why are you making up this sudden new rule for me? That seems to be the main thrust of the argument, at least today. And where is the answer to that? If there's a conflict, he's asserting this. And the association plan says one thing. And its articles of incorporation, at least, or its articles are at least confusing at best. So why didn't the Coast Guard need to address that conflict in the evidence? They could have done it easily. So why didn't they need to address that conflict in the evidence? Instead of just going, well, here's what we're doing to you. Well, so I guess I'll just say what was pointed out earlier and what we've explained in our brief, which is just one person's say-so is not enough to trigger kind of this broader inquiry into sort of looking at all records for past people. I mean, what the Coast Guard had was its own approved training plan for that association. And it applied its terms. And I think it also just makes good sense. I don't think it makes sense to think that the Coast Guard was approving people. Wouldn't it be easier for the Coast Guard to say, no, you're wrong. We've never registered someone who doesn't have at least more than one trip on the St. Lawrence River. Well, so what you're looking at obviously under the APA is a reasonably discernible path to the conclusion, which I think is just obvious here. And the Coast Guard explained in detail its concerns about safety. It explained in detail concerns about safety generally. But if you're that concerned about safety, trips, plural, with no further specification, does not give me much comfort. All right, so you did two. We've told you how hazardous and dangerous this is, but that's sufficient. There's not an explanation of this contextual inquiry. It depends on your background and experience. That's not in this training plan that's approved. This training plan just happens to use the plural trips, and that seems to be everything that's hinged on here. And he says that's not what you've done. He says in terms. That is not what you've done in the past. So I think it's a good idea to take a step back, right? We're not talking about a simple checklist. This is a particularly dangerous thing. Lives are at stake, and commerce you can cause lots of havoc if a ship gets stuck here. We're talking about you can't come rescue them. Okay? So, like, the way that this works across the states and before the founding is you do an apprenticeship with people who are experts in these local waters and these local dangers, right? So it says continue to make trips to show proficiency. Yes. There's no, like, you do two trips and you're done, right? It's that you're being evaluated by people who know these waters and can see if you're ready, right? That's how the apprenticeship program is set up and how it works. And here you have a single-hap around you, and that just wasn't enough. Let's suppose he had brought to the attention of the Coast Guard during the administrative process. He had, you know, two people who submitted affidavits, you know, under oath, that they had received their full designation without having done any solo navigation at all, you know, as part of the training program. Would it have been appropriate for the Coast Guard to say, look, we don't care, we don't discuss other mariners, you haven't done, you've only done kind of half of a trip, and we don't feel that that qualifies you, and so we're denying your full registration? Would that have been an appropriate decision? I think in the hypothetical, yes. I think the agency can certainly say, well, regardless of what happened in those cases, we just don't think that you're ready for this. We don't think you've completed your training program, and we're not going to depart from the face of the program that we approved and give you authorization to follow up. And they wouldn't have to explain why those people received full registration and he didn't? They would bear no requirement to explain the differential treatment? I think if there had been some kind of appeal in the other ones and then something had been decided at a higher level of agency, then there might be a requirement to deal with it more specifically, but I think when it's just saying, when there's just an assertion that it's been done differently in the past, I think the Coast Guard is certainly within its discretion to say, well, regardless of what happened there, we're not going to do it here. So I'm not sure I understand your last response. So it's not just an assertion they have evidence, and let's just for the sake of the hypothetical, you know, let's say they attach training records and everything to pretty much prove it indisputably that they didn't do any solo navigation trips during training, but they got the full designation. You know, at least two others did. My question to you is, is it a violation of the APA for the director under that circumstance to just say, look, I don't care about other mariners. I believe that the requirement, the registration and the training requires at least one round trip solo navigation under supervision, and you haven't gotten that, and I'm not going to discuss the other mariners and why they did or didn't get, or why they did get it, I guess. Do you think that that would pass APA review if that were the record before us? So on that hypothetical, right, and you're saying the agency addresses it and says, regardless of what happened on your case, I'm not going to. You're just saying, look, we're not going to discuss these other people. I mean, I think so. It's not this case, but I think so. You think that would survive review because. Yes, because I think the agency would be addressing it, and it would be saying, you know, regardless of that, we're still sticking. You might have substantial evidence. How is that not the definition of arbitrary and capriciousness? It's today we're enforcing the rule, last two days we did not. Well, I think, obviously, changes in position happen all of the time, and so long as. You were positive, a completely unexplained one that just said, we're not going to talk about that. Where has she ever said that we're not going to talk about them is a sufficient acknowledgement of a change in position. Where have we ever said that? So I'm dealing with a hypothetical without any particular facts. Well, you're making an argument about what the APA law is. Right, but based on. You said agency, and you're responsible if agencies can change their position. Right. But the positive hypothetical was where they said, we're just not going to talk about that. My understanding of the law is that the agency is going to change position. It has to acknowledge the change in a position, acknowledge any reliance interest, and give a reasoned explanation. It's not a heavy lift, but they have to do that. But I understood your answer to Judge Wilkins to be that it's perfectly fine for an agency to go, we're just not going to talk about that. So I apologize if I misunderstood the hypothetical. If the agency says, I don't want to talk about it, sure, that wouldn't be enough. He said directly to you, we're not going to talk about those other pilots. So this was in the prior stage before HITE-1, and what he said is, I'm not going to discuss. Not the hypothetical you were just given. Do you want to answer the hypothetical again? If you're given, here's what I have, my half trip or my one trip, but I don't have trips plural. Here's my evidence that Monday and Tuesday you gave full registration to pilots who have that same amount of training that I have. And the agency responses, I'm looking at the plan. It says trips plural. I'm enforcing that as to you. I'm not going to talk about what happened with those other two. I think that was the hypothetical. What is your answer? So I think there, if they say, I'm not going to address it, that wouldn't be enough. If they say, on the other hand, which is what I assumed was the question, if they say, whatever, you say that it was inconsistent. Even if it was, we don't think that that should be the standard to govern, and we are applying the training plan that we approved as written. I think that would be addressing it and explaining the reasons why you're still applying it in terms of the training plan. That's what I was trying to say. I'm not sure that would be acknowledging a change in position. We're not going to figure out if it was a change in position. That was your answer now. We're just not going to tell you whether it was a change in position, even if it was whatever. This is what we're doing now. I don't think that's enough. I think it's enough to explain why you're doing it despite potential inconsistency in the past. But, again, this is not the case here. Well, you have an assertion here that this is not how the system works. And, in fact, you also have the additional assertion that how am I supposed to get these trips? I don't have control over whether I get to do pilot something on the St. Lawrence River. So I don't think there's ever – I don't think that there's – I'm not aware of a place in the record where he said that he wasn't being trained and they were stonewalling his request for training. I think the only thing that he did was to say, I'm qualified. Grant me full registration. And the Coast Guard said, we don't think you are. And we're not going to give you authorization to sell that pilot. What does it take for a court to be concerned about – what has to be in the record for us to be concerned about inconsistent treatment? Why is his declaration not sufficient? Evidence. Yeah, I think an assertion – just you should look at other records because I think – No, no, no. I'm talking about a different assertion. Paragraph 98, JA 254. Only after a pilot was fully registered was he allowed to pilot a ship on the river under an experienced pilot's supervision. That's the trips that they say he hasn't done. Pilot a ship on the river under experienced pilot's supervision. He says that can only happen after they're fully registered, not before. So he's in an impossible catch-22 if you say you've got to do it before you can get registered. But he can't do it. They won't let him do it until he is fully registered. Where is that – so that's his declaration. That was before the agency. Where is that address? He took a half-round trip. So obviously he could do it. And then other people were – No, he only took a half. And one could interpret that the other way. The best he was able to get was a half-round trip. So I think you have the fact that – And, yeah, that's not the agency's explanation. That's not an agency's explanation. They don't even acknowledge this assertion. I mean, I think if someone is just saying everything works totally differently than what's actually written down, right, and you just apply what's written down, I think – He made a specific assertion about how this plan works in practice. Why didn't the Coast Guard need to respond to that before saying, you have to do something that you have told me the association won't let you do? Why is that a sufficient response? I think it's sufficient to apply the terms of the actual plan in practice. Someone says you can't do it as written. They may say that, but you cannot do it as written. Here's how it works. I think recall that the plan has to be approved by the Coast Guard. The association can't just do what it wants, right? So, like, saying you need to first figure out, like, what the association does, it's not really the question. The question is, what was he supposed to do? What was he supposed to do? He said, I can't get these. It's not how the association does it. How was he supposed to get the training? So he certainly could have said, they're not letting me train. Please intervene. And the Coast Guard certainly has authority. That's what he said, is I can't do these trips until you give me the registration. What he said was, give me full registration. What he said is, I can't do these trips until I have full registration. That's different. The Coast Guard is not going to grant full registration until you finish. If he said, I want to do the trips, make the association do it, because they're saying they can't. Yeah, when he made assertions about what the association was doing, the Coast Guard response was, that's between you and the association. That was, he said, they're not putting me on the tour to roll for the lakes, for which he was temporarily registered, right? And there it's like, he's working like other pilots on the lake. And the Coast Guard said, we're not going to intervene in the way that dispatch is run, because that's what the association is for. They dispatch people for, like the pilots. They also do the dispatching for the river. You've already told them. For people who are, there's two different things, right? There's the training program on the river, and then there's people who are registered to work on the river. They are dispatched to the river. People who are seeking training would seek it out. Any other questions? All right. Thank you very much, Counselor. Thank you. Mr. Longstreth, did I say that right? For the association. And, again, people have been up here a long time. I don't want to delaborate. Starting with where we were before on the trips, and I think this is where we started in the argument. It is written, and this has been pointed out before, and there was a very strong allegation in the reply that this requirement that he undertake the trips as a deputy pilot wasn't written down anywhere. And, as I think you started, Judge Millett, it is written down right on 135 to continue to make the trips. There was some confusion when my friend was up here because I think he misstated, and I think, Judge Pan, you may have gotten to the bottom of this. He misstated what happened here. Captain Hyatt has never argued that he continued to take these trips during 2016 and 2017. His declaration was very clear. I was done in April 2016, right at the start of the 2016 season. His position was, obviously, I didn't have to do this. He never argues that he did take these trips, even though it was the right thing to do. The J107 says that, but it changes the years. That's the problem. Well, it went backwards. I think they said 2017 and 2016 or whatever. But, in any event, I think the council, the Heights Council, just misspoke on that. He has never argued. I think he said at some point, oh, yeah, he took 12 trips in 2016 and 2017. And thinking about it, it really doesn't make much sense. You've got a three-year training program, and the whole idea is you move forward, you know, just like a junior associate, a mid-level associate. You know, you take on additional responsibility. The idea that, well, I just watch for a year, and then I don't have to do anything for two years, and then I get my registration to come on. You know, obviously, that's not the way it works. It's not the way it's set out here. And it doesn't make any sense. You're supposed to continue to make these trips on the river in 2016 and 2017 so that you can continue to progress. And, as government council said, the idea is as you get more experience, you start getting some hands-on experience. When did the association explain to the Coast Guard what opportunities he was given to do river trips?  I'm going to finish my comments. It's phrased like, oh, he made a choice. He just wanted the money. He stayed over here. Right. But that requires evidence that he turned down and rejected additional training, which I did not see. It seemed to be sort of an unfair characterization if he wasn't offered the training. So is there evidence that he was offered the training and he said, no, I'm going to stay right here where I can earn money? I don't know if that's specifically in there. I think Judge Pan was skeptical that the way this works is just sit back and wait for them to give you the training. That's not my question. My question is there was like the way it was phrased was very negative towards him. He just wants to stay on the lake and earn money and implying that he was not taking opportunities to do the river trips. So I'm going to ask my question again since the association is the one that has this whole plan, supposedly knows how it operates. Is there any evidence in this record that he was offered the opportunity to get these trips? I'm sorry. I think I'd have to look to see if that. I mean, certainly, as you would expect, somebody who's in a training program has to take some responsibility for his own training. There's certainly no evidence. I don't actually have any idea how this works.  Right. You know, associates and firms, like we put stuff in their inbox. Right. We don't expect them to go out in their first couple years and find the cases themselves and come back and go, what do I do with it? Right. But if they get to a mid-level, you want to see them taking some responsibility for their case. It's just like we want to see them taking some responsibility for their training. So tell me how it works. Tell me how, where, and I assume this is written down somewhere in your documents, how it is that these folks get assigned. What if people just said, we don't like Mr. Hyde. We're not going to give him any river trips. Yeah. The point is, there's no evidence. I am not sure if there's evidence that he asked and was turned down. I think what he would need for his position was evidence that he took the initiative and was turned down. And there's no evidence. You don't know how it works. No, I know how it works. Tell me how it works. How it works is, you're dispatched onto the lake, so there's a whole tour to roll and people take turns. And generally, you're dispatched on the lake. But at some point in the course of those two years, you have to say, okay, I've got these dispatches on the lake. I have to take, I have to find somebody and get my lake training. And you have to take responsibility for looking at that. So you have to go find, so that everybody has to go find somebody. Well, there's a training committee. There's a training committee and you know who they are. And you say, look, I'm supposed to continue my making trips to the designated waters. That's a requirement that he has, that he knows he has. And he has to take some responsibility for making that happen. He writes a letter saying, please give me some river trips? Yeah, there's nothing like that in the record. There's nothing in the record. That's how it works in practice? You go to the committee. I'm just. You go to the practice. Yeah, I mean, yes, as it works in practice, you take some responsibility. The committee runs this. There's a training committee. There's a training committee. Do they have any control over the dispatchers? Well, see, the dispatcher gets, you know, you're on a roll when they take turns. Who's they? The people who run the dispatch committee. The dispatch committee is different than the training committee. Yes, that's right. The people, the dispatchers. Okay. They actually do that. So what's the point of going to the training committee and saying, I need these things. Yeah, I mean, the answer is you can say, okay, I've been defended. There are lots of requirements here, too. I'm sorry. I'm asking for a very direct answer to a very direct question. Okay. All right. There is a person or portions in charge of dispatches. Right. He needed river dispatches. You say he had to take initiative. And your first explanation was, well, go to the committee. But the committee doesn't control dispatches. So what was he supposed to do to get dispatches on the river? One thing you could do, I suppose, and look, I mean, you're a little bit outside. I don't do this day in and day out. So I don't really want to try to answer. Well, the association does this day in and day out. I'm sorry. Your client does this day in and day out. It's their program. Right. Yes. And this is an issue in this case. And so how does he, you can't tell me, oh, he should have done something more, but no one can tell us what more he was supposed to do. Well, you can tell the dispatch committee, I can't be dispatched because I have to go training. That would be one possibility. You could try to get the dispatch. He wants a particular dispatch. He wants a dispatch for a river trip. Right. It's expected that dispatches is for people who are going out to be the pilot. Right. And be paid for it. So if you're a dispatch. He's only getting dispatched on the lake because he's got a temporary membership for the lake. And he's on the road toward a role for the lake.  But if he wants to go on the river, he has to go to the training committee and say, I need some time on the river. Can you arrange that? He could do that. And he could also tell the dispatch committee, so let's just take a hypothetical here because my client does this day to day. I do not. But suppose the dispatch committee comes and says, the dispatcher, I don't know if it's a committee. Suppose the dispatch people come and say, we want to dispatch you on the lake. And you say, I'm sick. Okay. You have to find somebody else. And so they find somebody else. You can also come and say, okay, you're going to dispatch me. You know, I need to do these river trips. Find somebody else to dispatch. I need to do my river trips. In other words, you can try to work it out. That doesn't get him river trips. That just gets him unemployed. No, it doesn't get him. Yes, because you said they're coming saying go out on the lake. And he says, no, I have to get some river trips. Correct. He can say that. Okay, you can't have this lake trip. That's right. And that's exactly the point the Coast Guard tries to get the river trip. He gets the river trip because then he goes to the training committee and says, I now have a slot here. I'm not doing, I'm not. So his argument is basically. And the training committee. We're talking past each other a little bit. Can the training committee find who's going up the river today or tomorrow and say, okay, thank you for coming and telling us that you needed experience going up the river. We agree that you do. It's required. We know that Captain Pan is going up the river tomorrow. You will go with her. Yeah, exactly. And that's how it works? And they can say to the dispatch people. I don't want to put, I want to know that's how it works. And so then Captain Pan has to take him along? Well, I mean, it would probably depend on the schedule. But let's back up a little bit here. He had two years to get this done. Okay. At some point in the two years, he can go to the dispatch folks and say, look, I don't want to be dispatched here. I need to go on the river. Just as he could if he were sick or had some other conflict. He could take some responsibility for doing this. It's a 20-person organization. They can talk to each other. And you just work it out. You tell the dispatch people, I need you on the river. You find somebody on the training committee, you take some responsibility, and you get it done. I'm getting the sense that maybe you're not clear on how the river trips work. Because whenever we keep asking you for a direct answer as to how does it work, you go into sort of hypotheticals of things you want to get done. Because the thing is, there's a whole, I assume, class of deputy pilots who need river training. So there must be some process for them to get the river training. But I'm getting the sense that you don't know what that process is. Which is fine, but you should just say you don't know. That's what I was trying to say. I was trying to say, look, the way it must be in a small group is that you can take some responsibility for getting it done. The people can talk to each other. You can get it done. My only point is there's no evidence in the record, as was pointed out earlier, that he ever tried to make that happen. The evidence is exactly what I think you were saying, Judge Pan, that his action is, well, I just sit back. There's nothing I can do and be dispatched. The point on the late dispatch, and I think Judge Millett's question, you're getting right to what the Coast Guard is saying. The point of that is because, and I can't remember exactly, if you either didn't get paid when you were taking these river training trips or you got paid for either one or the other. You either didn't get paid or you got paid less when you took the river trip. So you were giving up some income by turning down the late trip and taking the river trip to get your river training. And that was the point the Coast Guard was making. He does not have a financial incentive to do that. He has a great financial incentive. He wants to get the full registration so he can get all the same work. I'm assuming, I could be wrong, that piloting up the river, given all its dangers and difficulties, may pay better in the long term. It's just like anybody else who takes a little time off to go to school. Well, we can't assume that he was driven. The way it was portrayed to us is he was driven by finances. We can't assume that at all. Well, I mean, with all due respect, I think you can because his position was, I've already done everything I'm supposed to do on the river. I took these 12 trips that ended in April 2016. I'm done. I don't have to do anything on the river. And then his counsel says, and by the way, there's nothing written down that says I have to. But there is something written down that said he had to. His position was he didn't have to. I'll go keep making money on the lake. I won't do this river training. And I'll get some counsel later to say I can be registered anyway. That's what's going on in this case. Did the association tell the Coast Guard, and where is it in the record, that he was wrong when he said, only after a pilot is fully registered is he allowed to pilot a ship on the river under an experienced pilot's supervision? He said that to them. Did the association answer that? I think what the association, and this kind of gets a little bit, the answer is I don't know if we put that specifically in the record. That seems pretty important. That's his evidence that you don't require that we do all these trips again as a deputy. You told us how dangerous this water is. Who wants somebody still in training doing the navigation? With all due respect, there were so many things that Campton Heights threw into this record. If we overlooked addressing one specific thing to provide to the Coast Guard, maybe that's on us. But, you know, this gets to the point about just his say-so. Can you say he's wrong? He is wrong, yes. Your question is, did we put this in the record that he's wrong? The answer is, yes, he's wrong for the reasons I'm explaining. Anybody can take responsibility for complying with this written requirement that his counsel said didn't exist, but anybody can take responsibility for that. There's a way it can be worked out. Did we lay that out for the Coast Guard in the record, you know, all these specific questions about what you do and all that? I'm not sure if we did. I'm not sure if we put that in the record. The point is he has no evidence to contradict. I would have thought it would be, this is not a scattershot thing, I would have thought it would be core and elementary in saying he didn't meet the deputy pilot training program to show that we do let deputy pilots go out on the river piloting a ship under supervision. So you can't just say we require it without saying, and it happens. This was not a sort of one of those things that was, you know, This goes to the very core of the issue here. You say he doesn't have this training. He says I can't get this training. So why wouldn't that have been something? I mean, he can get the training. And look, if it's something that we didn't specifically put in the record in chapter and verse, You tell me, I don't need chapter and verse. Give me something implicit. Yeah. You know, I can't sit here and say that He says I can't. You say he can. Neither is in the record. What are we supposed to do? Well, I think it seems to me, we're going back to I think where we started here with specific requirements in the training plan. He argued it isn't. It is. And his position is that apparently that he didn't have any responsibility for completing this, that it was up to us to handle it and maybe sit him through the process. That's not our understanding. And if we didn't put that specific understanding in the record, that might have been an oversight on our part. He raised an awful lot of different points. I did want to get to Judge Wilkins' point just as one last thing before I sit down because now I'm over time. But the whole question about Baltimore Gas and Electric and what about these other people. I mean, I think I kind of see that kind of the way Judge Wilkins did, which is you do have a requirement here for undertaking these things. And if it's clear that you didn't fulfill this requirement that's right here on page 135, if it's clear you didn't undertake that requirement, you can point out, you can say, well, maybe other people didn't have to do that. There's no evidence here in the record, their allegations, that the agency actually looked at those other people and said, yes, we, the agency, are fully aware of all of this. We, the agency, have decided that it's okay for them and not okay for Captain Hite. And I think that's the difference between Baltimore Gas and Electric. In Baltimore Gas and Electric, the issue had actually been squarely presented to the agency. So we didn't have a situation where somebody was just making, as you pointed out, an unsupported allegation that other people were treated differently. You actually had agency decisions that said, here's the set of facts with these other people. We're coming out differently in that case than we're coming out here. There's none of that in the record here. There's just the allegations. The decisions for registering these other pilots matters of public record? They're not matters of public record. They're not matters of public record. Yeah, I don't believe they are. Well, then how's he supposed to know? Well, he says he knows. You can't just say the Coast Guard did it, but the Coast Guard is the only one that's holding the papers. Right. That's his argument in response to this. You're telling me that's reality. It's not just his argument. That's reality is what you just told me. Well, no, because I think you pointed out one thing he can do is he can go talk to the other people that he's speculating about and say, hey, did you make the trips or did you make the trips? I mean, that was the point that you raised with my. I got my bar license without passing the exam. I don't want to find a declaration saying that in public. Who's going to want to say, no, I wasn't trained either? Is that realistic? I think it is. I think it's realistic that I think you try to come up with something. Or at least you say, let's put it this way, if you talk to the person and he says, well, yeah, I mean, take this for example. You talk to the person who says, yeah, this happened to me. You can put that out, but he doesn't really have that either. I think the answer is it's just you've got speculation and the agency has to run down every speculation. I think that's really the answer to it. Any more questions? Thank you. Thank you very much, Councilman. All right. Mr. Redfern, we'll give you three minutes. Thank you, Your Honor. Quick point about Baltimore Gas. The court in Baltimore Gas specifically rejected the argument that this burden to explain inconsistent treatment doesn't apply if decisions are made by low-level employees or aren't contested. It could affect the weight that it puts on that prior precedent, but the burden of explanation is still there. These are agency decisions at issue. The decision to register a pilot is made by the Coast Guard, and the Coast Guard is supposed to be receiving these pilot training records to confirm that it's done. So those are Coast Guard decisions. The only burden that we're asking for here, this is not to do a sprawling investigation. We're just talking about evidence that is under the agency's control. I think that's a pretty limited burden here when we have such specific allegations. You understand that we see a lot of agency cases and saying, look at the records you have under your control. It's not a small ask. Well, this is a pretty small ask because he identified the pilot. So we don't have a small ask rule. Well, Your Honor, I think that that goes into the reasonableness of agency decision-making. If you have this kind of a contested issue, and the burden is very small, and the party is just pointing to it and says, look at those 10 people. It should be in your records. I just don't think we could say it's reasonable. The 10 people weren't as to the critical argument here. The 10 people were as to the minimum trips and then getting to take the exam, or whatever was even 10 people. But here you just have a flat assertion that you can't do the trips you want me to do until you're fully registered. It's just a sentence? A single sentence? Your Honor, this is not just about the minimum trips. There was a lot of back and forth between my client and the Coast Guard. Where in the record does he list people? JA-208. And this is where the Coast Guard is saying, you seem to have not completed your training. He says, I've done all the training. I did the same training as these other pilots. Look at their records. So he didn't yet know that this was going to be even about the minimum trips requirement. And throughout this back and forth where the Coast Guard was saying, well, the Association says you haven't done your training, he said, I don't know what training I haven't done. They say, take it up with the Coast Guard. And he said, or sorry, take it up with the Association. He talked about in 208 about exam pilot training records. Exam, we're not talking about the exam now. 188. So he was trying, to be clear, Your Honor, he wanted to take the exam, and they were saying you can't take the exam because you haven't completed your training. Now we're talking about a different thing. Now we're talking about his separate allegation, which comes paragraphs after his talk about who got to take the exam stuff on paragraph 98, which is just a flat sentence. Only after pilot was fully registered was he allowed to pilot a ship on the river under an experienced pilot's supervision. That was the basis of the Coast Guard's decision. That's what the issue is here. You said he couldn't. But there's no, he doesn't say, ask so-and-so. He doesn't name anybody. Your Honor, at JA 188 and 208, he identifies the specific pilot numbers. He says, I'm being treated differently. Now, at this point, I agree that he didn't know. But 188 is still about the written exam. I'm asking you for evidence that he was treated differently and that documenting that nobody or nobody that he knew was given full registration, not taking an exam, was given full registration without having done even a single trip on the St. Lawrence River. Your Honor, it's the same issue because in Height 1, what the Coast Guard said was, you can't take the exam because you haven't completed your training. So he won, he got to take the exam. Now they're saying, you can't get registered because you haven't completed your training. And in Height 1, in all that back and forth with the Coast Guard, he was saying, I've done all the same training as everyone else. I've completed it. Just look at their records. It's a different allegation to say that you can't do. No, his argument there was, I've done these as an applicant, where he talks about, by the way, as an applicant, you go to sleep while the pilot takes it through the river. He said that others have, Your Honor. He did not say that he did. It's not helpful to him. It doesn't show he's had any real training at all. This is a different point. This is about mechanics, about when. This is a different factual assertion. How can I get these trips in? And that was not what happened before. He doesn't say, I know anybody who was able to get these trips. Every person was not able to get them until after they were fully registered. J189 is one of the places where he tells the Coast Guard that the Association won't talk to me. That's not evidence of how other people were treated. Your Honor, though, the Coast Guard was saying, you have to talk to them to find out what you need to do. He was saying, I don't know what I need to do. I've done everything I was supposed to do. And they say, talk to them. And he says, they won't talk to me. So how is he supposed to find out what it is that he hasn't done? Well, then why is he making assertions? Why is he saying, I know how this works, but he doesn't have anybody who told him this is how it works? Because, well, he was saying that I did the same thing that all of my colleagues did. Okay, then get statements from your colleagues saying, I got full registration before I did any trips, solo piloting under supervision on the St. Lawrence River. Well, as Your Honor knows, it's not necessarily easy. And at no point did the Coast Guard Do them under John Doe, submit them on camera. The Coast Guard never said that there was insufficient evidence. Show us proof. They just said, we're not going to talk about it and we aren't going to address it. Now, I think that this fact that he's consistently told the Coast Guard that I can't get an answer from them, I think that really undermines this notion that he knew what he was supposed to do and that this was all public. He's saying, he's representing, I did what I was supposed to do. I did what I was told and what everyone else did. The Coast Guard says, we're not sure what you have or haven't done. I'm going to take it up with the association. And he tells them, the association won't talk to me. How is he supposed to get these trips? How is he supposed to even find out what it is that they think he didn't do? And also to the plausibility point, does it make any sense to think that this small organization, if this was in fact a requirement, had no idea that he hadn't done something that was supposedly required? That he'd been doing this for two years, he's on the verge of getting added to this group, and then they come up with this at the 11th hour after they've already decided that they're going to blackball him. And then finally, just to the full versus lake registration issue, because there was some skepticism about that earlier with Judge Pan, I think JA-130 is probably the best answer to that. This is where my client gets his temporary registration. It just says, he's temporarily registered, and then he will be added to the Twitter role for the lake. And that's how this worked. They weren't saying, you get a full registration for one, and then you go back to the Coast Guard for another. It was that the association, through its dispatchers, was only sending people where they had completed their training. And that's all he wanted in this case, was to get full registration, to pilot ships the way he had been doing over 100 times, and to do it on the lake. Any other questions? Thank you very much. Both counsel, we kept you up a long time. The case is submitted.
judges: Millett; Wilkins; Pan